All right, counsel, you may proceed. Good morning, Your Honors. Guy Wallace for Plaintiffs Annapolis. I'd like to reserve four minutes. Watch the clock. Yeah, I think I can see it from here. Okay, if you can't, I won't tell you. Thank you, Your Honor. May it please the Court, there are three main reasons that the district court's order denying plaintiff supplemental motion for fees and costs should be reversed. First, under governing law, the Willits Settlement Agreement was an excellent result for the plaintiff class. And ordinarily, we know that this means that plaintiffs should recover all of their reasonable attorney's fees, their full load star. But that's not what happened here. Here, the district court denied all fees based on its April 22, 2016 deadline. And that was the deadline that the district court had set for the Rule 23-H notice to the class. The problem was, what made that erroneous, was that there was much compensable work to be done after that date that could not be claimed on the April 22 deadline. Counsel, didn't you specifically represent to the district court that there was going to be one motion? I'm looking at paragraph 32 of your declaration. The parties agreed that all attorney's fees, costs, and expenses incurred by plaintiffs in all four actions would be submitted to this court for resolution by way of the pending motion, with a capital M, which refers to the one the court decided in August. Didn't you tell the court, one motion, this is it? What that referred to, Your Honor, was the district court's line of questions to me about whether there would be fee applications. I was reading from your declaration, Counsel. I also have the transcript, but I'm looking at paragraph 32 of your declaration. Okay. And I'm confident, Your Honor, that what that declaration referred to was the fact that we were not going to be pursuing fee applications in the related state law cases, of which there were four, in which we had done significant work, but that we were going to raise our load star in federal court. And at that time, we had filed the initial motion by April 22, as we were directed, and we had done significant compensable work thereafter leading up to the August fairness hearing. And so I'm confident, without having it in front of me, Your Honor, that what that was referring to was there was one big motion in federal court at that time. There weren't going to be any more motions in state court. And we had updated the district court in July with declarations identifying to the district court that we had incurred additional compensable time to our load star. Well, Counsel, the district court in footnote four of her order in citing your declaration, as well as the transcript, said, and I quote, the plaintiff's counsel also represented to the court that they would not file additional fee motions in this case or the related state court action citing your deck and the transcripts and pleadings. Was this finding clearly an error? To the extent that the district court was trying to make a determination in footnote four that we would be barred by judicial estoppel, there is a legal error there. And that is the district court has identified a seemingly inconsistent position, you know, which we believe was clearly erroneous. But to have a judicial estoppel that would bar us from recovering our fees, you'd also need to show a successful effort to mislead the court in unfair advantage or prejudice against the defendant. And the district court didn't do any analysis of those two factors. And the Supreme Court in New Hampshire versus Maine said you have to analyze all three factors. And this court described that as being reversible error in Sadlowski versus Michael Storrs, 672, Fed Appendix 729, 730, 731. So the fact that the district court believed at that time that there was a seemingly inconsistent position from plaintiffs is insufficient to give rise to judicial estoppel. Well, the court also relied on the language in Rule 23. And you did not get court permission to file the second motion or a date for that, correct? Your Honor, we're not aware of any language in Rule 23 that requires us to seek leave of court to file a fee motion. If what Your Honor is driving at was that there had not been a second further notice to the class? No, I'm talking about the language in the rule that says that the claim must be made at a time the court sets. And the court set the one hearing in April. You submitted supplemental fee declarations after your motion. The court didn't give you that. And then nine months later you filed this motion. Right. We did indeed meet the April 22 deadline, but Your Honor has hit the nail on the head. There was a lot of compensable work that was done after April 22 that we could not claim or recover. And this was stuff like the final approval motion, motion for service awards, trying to recover fees on fees for a fee application. Was everybody aware of that? I mean, did you make the district court aware that there would be a supplemental motion to cover post-settlement work that was required under the settlement? What we did do, Your Honor, was file declarations from all of the plaintiffs' firms and public interest organizations in July. Say, we've done this additional work to try and get the settlement approved. And that was all work that had to be done after the April 22 deadline. You sought the first time the maximum you could get under the settlement agreement, right? That is correct. You sought the maximum. The court didn't give you the maximum. And then nine months later you filed the supplemental memorandum. If the court had decided to give you the maximum, you wouldn't have been able to file any supplemental motion. That's true. But that's because the settlement capped fees recoveries at $15 million. When we filed the supplemental motion, we were also trying to recover the time and expenses that we'd incurred in the second stage of the settlement approval here, which was making sure that the Carter-Famey settlement agreement was approved in state court. Because the Willits settlement agreement was not going to be final or effective unless the parallel Carter-Famey state court settlement became final and effective in superior court. And so we had some additional time and effort involved in doing that. Because when Her Honor signed the August 25 initial fee order and then the judgment on the 26th, the Carter-Famey settlement agreement had not yet been signed. And the motion for the approval of Carter-Famey had not taken place. That all happened in 2017. Carter-Famey was not approved by the superior court until 2017. And so we had additional time during those months that we spent on this case, albeit not great amounts, but additional time that was compensable. And none of that could be sought by the April 22, 2016 deadline. And so that's the whole problem with the schedule that the district court set up. There was no mechanism, Your Honor, for us to recover the work that we did after that point in time. Now, to the extent the district court had the rationale that, well, there needs to be a further notice to the class and there wasn't one, to our knowledge, no court has ever said that just because you didn't do notice to the class where one was required, your fees were automatically barred. This court in Allen, which we cite in our versus Bedalla that we cite in our papers, where class counsel didn't provide any notice at all, said, well, you can go back, do the notice, and then on remand, your petition for your lodestar will be considered. I have a question about your costs. The court denied or didn't reach the question of your taxable costs since the application was still pending. Is this application theoretically still pending? As far as we know, Your Honor, three years later, we have never received word from the clerk of the court. So theoretically, you could bring a mandamus action to have this acted upon? Or you could just make an inquiry of the clerk. We have tried that, Your Honor, and we have been unsuccessful based on multiple attempts. Because it was not denied on the merits. It was simply it's pending, and it's now three years later that it's still pending? That's correct. You can reserve the remand. Good morning, Your Honor. May it please the Court. I have two questions. One is, the court denied the court the right to provide the access throughout the entirety of the city. However, the facts and the law confirm that a supplemental fees motion is inappropriate. In this case, there's a couple issues that need to be looked at. First is the effect of the final judgment, and whether or not the trial court and this court have jurisdiction over these matters. The second is whether the facts and circumstances of this case justify denying a second fee award. As this court is aware, you can affirm the lower court's order on grounds that are in the record, even if it's not found by the lower court. Turning first to the history of the judgment in this matter, in order to fully understand the process and the significance, a brief history is necessary. This was a long litigation. The district court issued a specific order that stated the exact date that a motion for fees was to be filed. That was pursuant to not only the party's agreement, but also Rule 23H, which sets forth that in class action situations, the judge will dictate those dates. But isn't it called an initial motion? Yes, Your Honor, it is. In Rule 23H? So what does that mean? It says the initial motion shall be filed. There's no case law that's interpreted it. The legislative discussion that we looked at appears to address the initial motion and moving papers, not referencing the opposition reply, supplemental reply, and briefing. So it does not ever talk about, and there's no reference we've found, where initial refers to authorizing multiple proceedings. Now, going back to this matter, Your Honor. Would you agree that initial is at least ambiguous? Yes, Your Honor, I do. However, the court's order was not. The court's order stated very specifically that plaintiffs were to file their motion by a date certain. Now, they did file that motion, and the hearing date was set off quite a ways. But what's significant is that plaintiffs filed a series of supplemental declarations and requests that added additional fees that they had incurred as they neared that hearing. And those supplemental submissions continued almost up to the date of the hearing. Now, if you look at the record, at excerpts of the record 1870, there is a spreadsheet that plaintiffs prepared that's in plaintiff's declaration that sets forth their exact fees and costs that they were claiming in total up to that point for submission of the motion. Now, those don't include some of the supplemental fees, but the significance of that is that the actual fees awarded exceeded what appears on that paper. So the judge must have, the court must have considered the supplemental submissions that came after the initial paperwork because they did award that. Now, the reason that's relevant is because much of that supplemental submissions that were made after the initial hearing, but before the final fee order was issued, formed the basis of the second fees motion. So the question is, did the court consider it and grant part of it and deny part of it? Or are we just going to have double dipping here? Well, counsel, part of your argument is that clear representations were made to the district court like at the hearing where your opposing counsel said, this is it, this is the only fee application from plaintiff's counsel and will it's Pineda or Griffin, that everybody's agreement was one application, that's it, and then it's over. Yes, Your Honor, that's absolutely true. And I would point to the fact that both standing in front of the court and in the sworn declaration, counsel's statement was, this is it, this is the only fees motion and will it's, and then he lists the other cases. So the notion that they're reserving the right to seek additional fees and will it's is belied by the evidence in the record here. We have counsel standing in front of the judge in the sworn declaration, but even if they had reserved that, judgment is final once it's entered by the court and there's no appeals 30 days thereafter. The final judgment was entered in this matter and was finalized on August 25th, 2016. Well, counsel, on your jurisdiction issue, though, whether the second motion was meritorious or not meritorious, don't we have jurisdiction over the appeal because this was a collateral order? No, Your Honor, because there's actually case law on that, and in particular, the case in, I believe it's Tillman, if I'm not mistaken, Your Honor. Tillman actually, this court found, it's Tillman v. Association of Apartment Owners, and that's at 284, sorry, Your Honor, my glasses broke, 234 F. 3rd, 1087. And this court found that both the trial court and the appellate court were without jurisdiction to rule on motions because the judgment had become final. And once the judgment is final, it is jurisdictional. Were those attorney's fees motions? There were, I believe in Tillman, it was a motion for under 59 to amend. I believe it was for a new trial. But aren't typically attorney's fees motions, again, whether meritorious or not, looked at as the type of collateral orders that are separately appealable? No. In fact, Your Honor, the ruling and the cases interpreting Rule 23H have stated that once the court sets an order, they must proceed in compliance with that order. And once jurisdiction, and in fact, under the applicable statutes, a motion for fees is to be required or to be filed and heard within a statutory time period after entry of the judgment. So whether you go under 23 or under any of the other statutes, I believe it's 54, which mandates when a typical motion for fees for a prevailing party, it must be filed and heard prior to judgment. And in fact, we've cited numerous cases that have actually reached that same holding, Your Honor. And in particular, the, if I can find the Supreme Court holding here, Tillman is the one, and there's another one that I'll come to in a moment that you'll forgive me. But, Your Honor, in this instance, we had, it's Brower v. Director of Department of Corrections, 434 U.S. 257, Your Honor. And in that situation, the Supreme Court talks about the mandatory nature of Rule 4, and that it is jurisdictional and is not subject to manipulation. If a fees motion could circumvent the finality rule, then any aggrieved litigant could simply refile the fees motion to reopen the opportunity to file an appeal. But only of the fees motion. I mean, that wouldn't reopen the appeal of the matters decided in the final judgment. I mean, isn't that basically what the collateral order doctrine does? It says there are certain things that are appealable, irrespective of whether the case is going on or even concluded. No, Your Honor. Actually, the finality rule says that jurisdiction is final. And there is no exception to that. Supreme Court has affirmed that time and time again. And they have said that once a matter is final and an appeal has not been filed under FRAP 4, that the matter is concluded and the trial court and the appellate court are without jurisdiction to proceed on that. Now, those same arguments on finality apply equally to the second motion as they do to the cost application, Your Honor. Because the taxable cost was pending, plaintiffs had the opportunity to either apply to the court, either do a writ of mandamus, an ex parte, or some other process. The fact that they did not proceed on that within a timely fashion waives that right. I don't understand how it can waive the right. I mean, they file under the rules a request for cost. The district court or the clerk or both are supposed to act on it. How can they waive their right to cost simply because they haven't filed a mandamus application? If the district court errs, the party has the right to challenge that through either a mandamus action, an ex parte application asking, or an appeal of some sort, a motion for reconsideration. Any of those mechanisms would be able to bring it forward. But they have to be filed within the time frame. It's akin to a motion for reconsideration, Your Honor. What's the time frame? Within the time frame would be within 30 days from the entry of judgment prior to filing under Rule 4 of the Federal Rules of Appellate Procedure. So in your view, clerks have to decide all cost motions no later than 29 days, or the district court and the clerks have to decide cost motions no later than 29 days after the judgment? Yes, Your Honor. I believe that's what the rules state, and I believe that's what the case law said. Now turning to the facts of this matter, as Your Honor stated, there's at least two references, and there's actually many, many more where a plaintiff has stood in court and stated explicitly, plaintiff's counsel, excuse me, that there would be only one motion. You can find those references not only in the court's order denying the second fees motion, but also at the excerpts of record, it's 1361, 1362, 1366. Now the agreement itself, which the parties negotiated expressly precludes the second fees motion. If you look at ER 1101, it contains the specific language and agreement to the parties on how the fees motion should proceed, and in significant part, Section 21.3 provides that the fees motion will proceed pursuant to the schedule imposed by the court under Rule 23H hearing. That was the process that was followed for the first motion. There's no provisions or no agreement to proceed with any other submissions. Furthermore, the language of the agreement uses the term motion singular. There's nothing else. Even more significant is that the city actually, well, let's go back one step. The settlement agreement defines final as the date that the trial judge issues the judgment or 30 days after if no appeals are filed, and that's specifically defined, I believe, at 1083 of the record. I'm sorry, Your Honor, 1063 of the record. So at 1063 of the record, you'll see where it says final, and it's final as of the date it hits the docket. And you paid counsel the fees in 2016, right? Yes, Your Honor, we did. And the second motion was filed some months after that, after they'd gotten their $13-or-whatever-million? Yes, Your Honor, that's correct. We had paid them the final check shortly after the judgment was entered, before Carter Faming was approved. We had proceeded with the settlement. The city was desirous of getting this program underway. Although it had been making disability access improvements for several years, they wanted to kick this program into high gear. They moved forward. And the significance of that is that the settlement agreement has a provision that says that if the district court modifies any terms, the parties can go back and discuss, hey, maybe we should set it aside. The city never exercised that. The city elected to accept it. This was not a contingent settlement. This was a final settlement. Part of the settlement agreement was you agreed for some reason that you wouldn't oppose the fee motion? That's correct, Your Honor. The city had a priority in moving forward with the repairs. Sometimes there's issues that had to be conceded in order to get that moving. We wanted to make sure that Los Angeles was accessible. So, Your Honor, the record absolutely confirms. And furthermore, to the extent, two significant points on this. After the judgment is issued, there's nothing else to do on this case. This case is done. The notice had been issued. We had gone out. We had posted it. We had put it in eight newspapers throughout all of Los Angeles. We had put it on the Internet. We had gone out of our way. And the process of making sure the community knew about this was very, very significant and onerous. And there was nothing to do for plaintiff's counsel between the date the judgment was entered and the second motion. But yet we have a request for almost another million dollars for what? There's no benefit to the class. There's no benefit to the city. There's no benefit to anyone other than the private counsel, Your Honor, which begs the question what it is. But also significant. If you look at the settlement agreement, at excerpts of the record, page 1097 and 1098, the city built in a provision for monitoring fees. We agreed to pay plaintiff's counsel a set sum for the 30-year duration of the settlement to make sure that they were participating and moving this program forward, making sure that any improvements to the public right-of-way were done in a fashion that was 100% appropriate and that everybody was at the table together. And in relevant part, we agreed to pay plaintiff's counsel $250,000 a year for the first five years and then an amends thereafter to make sure that this program moves forward. So to the extent any other work was done or was necessary, it should have been submitted under those provisions which were built into the settlement agreement. That further confirms not only that the second motion was untimely, but that the parties intended that there will be only one motion and that any further work, if any was necessary, will come under those monitoring provisions, Your Honor. Now, as I've stated, I do believe the facts of this record support denying the motion in its entirety, or the appeal in its entirety. Plaintiff has been paid in full. If you look at plaintiff's own record, you'll see that they were actually paid more than they originally submitted, and that's excerpt to the record in 1870. The purpose of the ADA is to assure accessibility to disabled individuals, not for the private benefit and profiting of law firms. Plaintiff's counsel has been fairly and fully compensated on this. We paid them in full. We would ask that the city be allowed to move forward with the settlement and that plaintiff's appeal be denied. All right. Thank you, counsel. Okay. All right. With respect to the contention that there was an additional sum over and beyond our March 31, 2016, submission that was awarded in Judge Marshall's August 25 order, there was a $30 discrepancy. The August 25 order makes no reference to and does no lodestar analysis whatsoever of any of the work or time that we incurred after April 22, 2016, leading up to the August fairness hearing. With respect to counsel's contention that the settlement was final in August 2016, that is simply contrary to the language of the settlement. If this court looks at Section 5 of the settlement, it will see that the Carter-Famey final approval is a condition precedent to the Willett settlement becoming final. If this court looks at Section 6 of the Willett settlement agreement, you will see that if Carter-Famey does not become final, then the Willett's settlement agreement and the Willett's judgment will not be final. And that's in Section 6.1. And those EOR sites are 1069 to 1070 and 1075 to 1076. So there's no doubt that the judgment in the fee order, there was no finality in Willett's in August of 2016. In fact, Carter-Famey was not finally approved until May of 2017, and then six months after that, the appellate deadline for Carter-Famey ran, and so Willett's became final and effective on October 31, 2017. There is almost an 18-month gap between the April 22, 2016 deadline that the court set for fees in Willett's and the remaining work that had to be done to make sure the settlement became final and effective the following fall. And so that is the problem that remains. I have to say, and we did cite this case in our papers, in the district, 284F3rd at 1167. Various fee motions are permissible at various stages of a lengthy civil rights class action proceeding, including the award of post-judgment fees that are for work that benefited the class. Making sure that the Willett's settlement agreement was approved in August in the district court, and then making sure that Carter-Famey was approved by the following year so that both settlements could be final and effective was vital to the interests of the class. Counsel, I assume, though, there was no language in the declaration in those cases like yours here. The parties agreed that all attorneys' fees, costs, and expenses incurred by plaintiffs in all four actions would be submitted to this court for resolution by way of the pending motion. Otherwise, plaintiffs would have sought recovery of their fees incurred in connection with Carter-Famey, Griffith, and Pineda in separate motions in the Superior Court. That's your language, correct? And may I inquire as to the date of that, Your Honor? That was your August declaration, 17th of August, 2016. That's what I thought. And so at that time, that statement was absolutely true. Before the district court in August 2017 was the initial fee motion, which had all our time up through March 31st, 2016, and then the updating declarations in July that updated our time up through just before the fairness hearing. We put all of that in front of Her Honor, and she denied or did not award, but provided no explanation of why any time after April 22. And certainly, Your Honor, I hope that we would all agree that as of the date of my declaration, we can't reasonably expect that I was waiving all future fees after that time, all the work that went into making sure that the city went through with the Carter-Famey settlement and that that got approved, because that truly was, as you will see from reviewing the settlement, a precondition to the Willett Settlement Agreement becoming final and effective, and therefore absolutely was work that should be compensated under the case law. And so we would respectfully request that the order be reversed, and this be sent back so that the district court can do an actual lodestar analysis of the time that we expended on representing the class after April 22, 2016, and up through October 2017. We believe that's what the law requires. Thank you.
judges: Wardlaw, Cardone, Bennett